NUMBER 13-06-479-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


MADHAVAN PISHARODI, M.D., Appellant,


v.
 


ALEJANDRO J. BETANCOURT, M.D., MIGUEL

CINTRON, M.D., GIOVANNI GHAFOORI, M.D.,

CHRISTOPHER HANSEN, M.D., AND ERIC SIX, M.D., Appellees.

 

On appeal from the 138th District Court 


of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Garza 


Memorandum Opinion by Justice Rodriguez



 Madhaven Pisharodi, M.D., appeals the granting of both traditional and no-evidence motions for summary judgment in favor of appellees, Alejandro J.
Betancourt, M.D., Miguel Cintron, M.D., Giovanni Ghafoori, M.D., Christopher
Hansen, M.D., and Eric Six, M.D. Dr. Pisharodi sued appellees for defamation,
tortious interference with contract, and conspiracy to tortiously interfere with contract. 
By seven issues, Dr. Pisharodi contends the trial court erred in granting appellees'
motions for summary judgment. We affirm.

I. Background

 Dr. Pisharodi is a board certified neurosurgeon who maintains practices in
Brownsville, Harlingen, and Mission, Texas. Dr. Pisharodi has had privileges to
practice medicine at Valley Baptist Medical Center (VBMC) in Harlingen, Texas, since
November 1999. Appointment of privileges at VBMC is subject to a credentialing
process that involves the following: (1) the credentialing committee makes
recommendations to the Medical Board, (2) the Medical Board reviews the
credentialing committee's recommendations and then makes recommendations to the
Board of Trustees, and (3) the Board of Trustees makes a final decision to grant or
deny privileges. (1)

 On appeal, Dr. Pisharodi generally alleges that throughout his relationship with
Dr. Six, a neurosurgeon who has served as Medical Director of Neuroscience Service
at VBMC since 2003, Dr. Six has "manipulatively interfered with [Dr. Pisharodi's]
duties and status at VBMC, has made disparaging remarks about [him]" affecting his
reputation and interfering with his professional relationships. In addition, Dr.
Pisharodi claims that Dr. Six and Dr. Betancourt, also a neurosurgeon, have "been
the source of false accusations" which have lead to peer reviews.

 More specifically, Dr. Pisharodi points to several incidences allegedly occurring
at VBMC that he argues establish his causes of action against appellees. He first
describes a 2002 investigation into allegations that he abandoned his intensive care
patient. Dr. Pisharodi next maintains that when one of his patients died after surgery,
Dr. Cintron, an obstetrician/gynecologist and VBMC's Chief of Staff, and Dr. Ghafoori,
a plastic surgeon and Chief of Surgery at VBMC, "made false and deliberate
accusations that the patient died during the surgery." He claims that these alleged
accusations resulted in a chart review initiated by Dr. Ghafoori. The patient chart
from this review was forwarded to a university professor outside of the VBMC
community. The professor concluded there was no breach in the standard of care. 
According to Dr. Pisharodi, Drs. Ghafoori and Cintron then "misrepresented [his]
conduct to the executive committee and convinced them to issue a reprimand." 
Finally, Dr. Hansen, a retired general surgeon and VBMC's Vice-President of Medical
Affairs, terminated Dr. Pisharodi's First Response Team contract.

 On July 2, 2002, Dr. Pisharodi filed suit in state court against, among others,
Drs. Six and Betancourt, alleging violations of the Texas Free Enterprise and Antitrust
Act of 1983 (Antitrust Case). See Tex. Bus. & Comm. Code Ann. §§ 15.01-15.52
(Vernon 2002). Summary judgment was granted in favor of the defendants, including
Drs. Betancourt and Six, dismissing the Antitrust Case in its entirety. (2)

 On June 2, 2004, Dr. Pisharodi filed suit against Dr. Betancourt, Dr. Hansen,
VBMC, and others alleging Title VII violations for national origin discrimination,
intentional infliction of emotional distress, and negligence (Employment Case). 
Appellees removed the case to federal court. The federal district court granted
summary judgment in favor of Drs. Betancourt, Hansen, and Six and dismissed the
Employment Case in its entirety. See Pisharodi v. Valley Baptist Med. Ctr., 393 F.
Supp. 2d 561, 566, 578 (S.D. Tex. 2005). Dr. Pisharodi did not appeal the federal
district court's judgment.

 On March 14, 2004, Dr. Pisharodi filed the present suit against appellees
alleging defamation, tortious interference with contract, and conspiracy to tortiously
interfere with contract. Appellees moved for traditional summary judgment under
Texas Rule of Civil Procedure 166a(c) asserting they established one or more
affirmative defenses including res judicata, collateral estoppel, release, waiver,
immunity, limitations, truth as to the defamation claim, and justification as to the
tortious interference with a contract and conspiracy claims. See Tex. R. Civ. P.
166a(c). In the alternative, appellees asserted they were entitled to a no-evidence
summary judgment under rule 166a(i) because there was no evidence, or not more
than a scintilla of evidence, establishing each of the required elements of defamation,
tortious interference, and conspiracy. See id. at rule 166a(i). Without specifying the
grounds, the trial court granted summary judgment.

II. Standard of Review

A. Traditional Motion for Summary Judgment

 We review the trial court's grant of a motion for summary judgment on
traditional grounds de novo. Ortega v. Nat'l Bank, 97 S.W.3d 765, 771 (Tex.
App.--Corpus Christi 2003, no pet.) (op. on reh'g). The issue on appeal is whether
the movant met its summary judgment burden by establishing that no issue of
material fact exists and that the movant is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002). 
In determining whether there is a genuine issue of material fact, we take as true all
evidence favorable to the nonmovant and indulge every reasonable inference and
resolve any doubts in the nonmovant's favor. Ortega, 97 S.W.3d at 772.

 A defendant who conclusively negates at least one essential element of a
cause of action or affirmatively establishes each element of an affirmative defense to
each claim is entitled to summary judgment on that claim. Id.; Sw. Elec., 73 S.W.3d
at 215. Once the defendant produces sufficient evidence to establish the right to
summary judgment, the burden shifts to the plaintiff to raise an issue of material fact
with regard to the element challenged by the defendant. Centeq Realty Inc. v. Siegler,
899 S.W.2d 195, 197 (Tex. 1995); Clarendon Nat'l Ins. Co. v. Thompson, 199 S.W.3d
482, 486-487 (Tex. App.--Houston [1st Dist.] 2006, no pet.) (citing City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979)); Rodriguez v. Klein, 960
S.W.2d 179, 182 (Tex. App.--Corpus Christi 1997, no pet.). When a trial court grants
the defendant's motion without specifying the ground, we will affirm the summary
judgment if any of the theories advanced are meritorious. Dow Chem. Co. v. Francis,
46 S.W.3d 237, 242 (Tex. 2001); Branton v. Wood, 100 S.W.3d 645, 647 (Tex.
App.--Corpus Christi 2003, no pet.).


B. No-Evidence Motion for Summary Judgment

 Texas Rule of Civil Procedure 166a(i) provides that "a party without presenting
summary judgment evidence may move for summary judgment on the ground that
there is no evidence of one or more essential elements of a claim or defense on
which an adverse party would have the burden of proof." Tex. R. Civ. P. 166a(i). The
trial court must grant the motion if the nonmovant does not produce summary
judgment evidence raising a genuine issue of material fact on each element
challenged. Id.; Mack Trucks v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006). The
nonmovant must produce more than a scintilla of probative evidence to raise an issue
of material fact. Oasis Oil Corp. v. Koch Ref. Co., 60 S.W.3d 248, 252 (Tex.
App.--Corpus Christi 2001, pet. denied). More than a scintilla of evidence exists
when the evidence "rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions." Merrell Dow Pharms., Inc., v. Havner, 953 S.W.2d
706, 711 (Tex. 1997). We "must examine the entire record in the light most favorable
to the nonmovant, indulging every reasonable inference and resolving any doubts
against the motion." Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam);
City of Keller v. Wilson, 168 S.W.3d 802, 824 (Tex. 2005).

III. Res Judicata and Collateral Estoppel

 By his first issue, Dr. Pisharodi contends the trial court erred in granting
summary judgment on the basis of res judicata and collateral estoppel. Because res
judicata and collateral estoppel are affirmative defenses, see Tex. R. Civ. P. 94, the
issue on appeal is whether appellees met their burden of establishing that they were
entitled to judgment as a matter of law by affirmatively establishing each element of
res judicata or collateral estoppel. See id. at rule 166a(c); Sw. Elec., 73 S.W.3d at
215. We will examine appellees' claim of res judicata first; (3) then, if necessary, we will
examine their claim of collateral estoppel. Williams v. Nat'l Mortgage Co. 903 S.W.2d
398, 402 (Tex. App.-Dallas 1995, no pet.) (citing Jeanes v. Henderson, 688 S.W.2d
100, 103 (Tex. 1985)).

 Res judicata precludes claims by parties on matters actually litigated in a
previous suit, as well as "'causes of action and defenses which arise out of the same
subject matter and which might have been litigated in the first suit.'" Barr v. Resolution
Trust Corp., 837 S.W.2d 627, 630 (Tex. 1992) (quoting Tex. Water Rights Comm'n v.
Crow Iron Works, 582 S.W.2d 768, 771-72 (Tex. 1979)). The party claiming res
judicata must establish the following: (1) a prior and final judgment on the merits by
a court of competent jurisdiction; (2) identity of the parties or those in privity with
them; and (3) a second action based on the same claims as were raised or could
have been raised in the first action. Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652
(Tex. 1996). When a federal opinion bars a state case, federal standards of res
judicata apply. San Antonio Indep. Sch. Dist. v. McKinney, 936 S.W.2d 279, 281 (Tex.
1996).

 It is undisputed that the federal court judgment in this case is a prior and final
judgment on the merits by a court of competent jurisdiction. Amstadt, 919 S.W.2d at
652. Challenging the remaining elements of res judicata, Dr. Pisharodi alleges that
res judicata does not bar his claims against Drs. Betancourt, Hansen, and Six
because the present lawsuit is against defendants who are not "identical parties" as
required by federal law and because the claims are not the same. See id.

A. Identical Parties

 In his federal lawsuit, Dr. Pisharodi sued Drs. Betancourt, Hansen, and Six,
VBMC, and others alleging Title VII violations for national origin discrimination,
intentional infliction of emotional distress, and negligence. Pisharodi, 393 F. Supp. 2d
at 568. In the present case, Dr. Pisharodi filed suit against Drs. Betancourt, Hansen,
Six, Ghafoori, and Cintron for defamation, tortious interference with contract, and
conspiracy. Dr. Pisharodi argues that res judicata does not apply because he sued
three additional defendants in the federal suit; therefore, the parties are not identical
in both cases. However, Dr. Pisharodi cites no authority for this contention, and we
find none. We are therefore not persuaded by this argument. In effect, res judicata
applies in a later lawsuit between identical parties who appeared in a prior lawsuit; in
this case, the parties are Dr. Pisharodi, the identical plaintiff in both cases, and Drs.
Betancourt, Hanson, and Six, identical defendants in both cases. See Abbott Labs.
v. Gravis, 470 S.W.2d 639, 642 (Tex. 1971) (allowing Abbott Laboratories to bar action
by plaintiff as res judicata although plaintiff sued additional defendants); see also
Haynes v. Lemann, 921 F.Supp. 385, 390 (D. Miss. 1995) (applying res judicata in
favor of defendants although plaintiff sued others in second lawsuit); cf. Richards v.
Jefferson County, 517 U.S. 793, 794 (1996) (providing that it is a violation of due
process "to bind litigants to a judgment rendered in an earlier litigation to which they
were not parties"). Because Drs. Betancourt, Hansen, Six and Pisharodi were all
parties to the federal lawsuit and to the present lawsuit, we conclude they are
identical parties.

B. Same Claims

 In determining whether res judicata bars a subsequent lawsuit, Texas follows 
the "transactional" approach of the Restatement (Second) of Judgments section 24. 
Barr, 837 S.W.2d at 631; see Restatement (Second) of Judgments § 24 (1982). The
transactional approach "provides that a final judgment on an action extinguishes the
right to bring suit on the transaction, or series of connected transactions, out of which
the action arose." Id. (citing Restatement (Second) of Judgments § 24(1)). A
"'transaction or series of connected transactions' connotes a natural grouping or
common nucleus of operative facts." Restatement (Second) of Judgments § 24 cmt.
b (1982). In deciding whether a common nucleus of operative facts exists, we look
to the factual predicate of the claims asserted and not the legal theory claimed by the
plaintiff. Collins v. City of Corpus Christi, 188 S.W.3d 415, 424 (Tex. App.--Corpus
Christi 2006, no pet.); see Nilsen v. Moss Point, 701 F.2d 556, 563 (5th Cir. 1983)
("This Court has recognized that the principal test for comparing causes of action is
whether the primary right and duty or wrong are the same in each action." (quoting
Stevenson v. Int'l Paper Co., 516 F.2d 103, 109 (5th Cir.1975))). We determine
whether a transaction or series of transactions exist by "pragmatically, 'giving weight
to such considerations as whether the facts are related in time, space, origin, or
motivation, whether they form a convenient trial unit, and whether their treatment as
a trial unit conforms to the parties' expectations or business understanding or usage.'" 
Barr, 837 S.W.2d at 631 (quoting Restatement (Second) of Judgments § 24 (2)). "A
determination of what constitutes the subject matter of a suit necessarily requires an
examination of the factual basis of the claim or claims in the prior litigation." Id. at
630.

 In his original complaint filed in federal court against Drs. Betancourt, Hansen,
and Six, Dr. Pisharodi alleged "[Drs. Six and Betancourt] have subjected [Dr.
Pisharodi] to needless, harassing peer reviews; they have published untrue,
defamatory statements about him; they have interfered with his patients and hospital
contracts; and in many ways, have actively sought to demean [Dr. Pisharodi's]
competence and professional integrity and reputation." Dr. Pisharodi stated that he
believed that Dr. Six was the "driving force of this hostility and aggressive interference
with [his] practice and career."

 Dr. Pisharodi described events and facts which he believed supported these
allegations including the following: (1) defendants, including Drs. Hansen, Betancourt
and Six, blocked Dr. Pisharodi from obtaining privileges at VBMC; (2) Dr. Six refused
to allow Dr. Pisharodi to name him as backup, while he offered support to other
competing physicians; (3) during Dr. Pisharodi's application for privileges at VBMC,
Drs. Betancourt, Hansen, and Six made false accusations that Dr. Pisharodi caused
the death of a six-year-old patient; (4) Drs. Betancourt, Hansen, and Six kept Dr.
Pisharodi off the emergency room call list even though he had a valid contract to
participate in the First Response Team; (5) Drs. Betancourt, Hansen, and Six
prevented other physicians from providing backup to Dr. Pisharodi for first response,
making him ineligible for emergency room duty; (6) Drs. Betancourt, Hansen, and Six
unilaterally and without authority terminated Dr. Pisharodi's valid contract with VBMC
to participate in the first response team; (7) Dr. Pisharodi was not given a welcome
dinner when he was granted privileges at VBMC; (8) Dr. Betancourt openly discussed
plans to oust Dr. Pisharodi from VBMC at a welcome dinner for another physician; (9)
Drs. Betancourt, Hansen, and Six falsely informed the medical director at VBMC that
Dr. Pisharodi had made a trip to India without securing backup coverage for his
patients; and (10) Drs. Betancourt, Hansen, and Six have subjected Dr. Pisharodi to
numerous and unfounded case reviews resulting in embarrassment and defamation
of his reputation and professionalism.

 After considering the motion for summary judgment on its merits, the federal
trial court granted summary judgment in favor of Drs. Betancourt, Hansen, and Six. 
Pisharodi, 393 F. Supp.2d at 578. In its order, attached as summary judgment
evidence in this case, the federal court summarized Dr. Pisharodi's claims as follows:

 [Dr. Pisharodi] claims that he is a highly qualified neurosurgeon who has
not succeeded at the same rate as similarly-skilled physicians. He also
claims that 'he has been forced to deal with relentless hostilities and
unreasonable encumbrances in the performance of his professional
duties' and that '[Drs. Betancourt, Hansen, and Six] have subjected [him]
to needless, harassing peer review,' have published false defamatory
statements about him, have interfered with his contracts . . . and that Dr.
Six has used racial slurs about Dr. Pisharodi's colleagues' company.


Id. at 566. 

 Dr. Pisharodi argues that the claims in this case are not the same because he
alleged different theories of recovery: in the federal case he asserted employment
claims brought under Title VII, intentional infliction of emotional distress and
negligence, while in the current case he is asserting slander, libel, tortious
interference with contract, and conspiracy. 

 Applying the transactional approach to res judicata, which requires any cause
of action arising out of the same facts to be litigated in the same lawsuit, if
practicable, Barr, 837 S.W.2d at 630-31, we have looked at the factual predicate of
the claims asserted and not the legal theory claimed by Dr. Pisharodi, and conclude
that the present allegations against Drs. Betancourt, Hansen, and Six merely assert
new theories based on the same nucleus of operative facts alleged in the federal
lawsuit. See Restatement (Second) of Judgments § 24 cmt. b; Collins, 188 S.W.3d
at 424; see also Nilsen, 701 F.2d at 563. Furthermore, after examining the factual
basis of the claims "pragmatically, 'giving weight to such considerations as whether
the facts are related in time, space, origin, or motivation, whether they form a
convenient trial unit, and whether their treatment as a trial unit conforms to the parties'
expectations or business understanding or usage,'" we conclude that the two actions
constitute the same cause of action for res judicata purposes. Barr, 837 S.W.2d at
631.

 Therefore, because Drs. Betancourt, Hansen, and Six met their summary
judgment burden of establishing that no issue of material fact exists as to their res
judicata defense and Dr. Pisharodi did not raise an issue of material fact, Drs.
Betancourt, Hansen, and Six are entitled to summary judgment as a matter of law on
that basis. See Tex. R. Civ. P. 166a(c); Sw. Elec., 73 S.W.3d at 215; Centeq Realty
Inc., 899 S.W.2d at 197; Thompson, 199 S.W.3d at 486-487; Rodriguez, 960 S.W.2d
at 182. The trial court did not err in granting summary judgment based on res judicata
in favor of Drs. Betancourt, Hansen, and Six. Because we conclude Drs. Betancourt,
Hansen, and Six established that res judicata bars the relitigation of Dr. Pisharodi's
causes of action, it is not necessary for us to address collateral estoppel as to these
appellees. See Jeanes, 688 S.W.2d at 103. We overrule Dr. Pisharodi's first issue
as it relates to Drs. Betancourt, Hansen, and Six.

IV. No-Evidence Summary Judgment In his sixth issue, Dr. Pisharodi contends that the trial court erred in granting
appellees' no-evidence motion for summary judgment under rule 166a(i) because his
summary judgment proof raised a fact issue as to each of the required elements of
his claims for defamation, tortious interference, and the derivative conspiracy claim. 
Having determined that res judicata bars Dr. Pisharodi's claims against Drs.
Betancourt, Hansen, and Six, we need only determine whether the trial court erred
in granting summary judgment under rule 166a(i) in favor of Drs. Cintron and
Ghafoori. See Tex. R. App. P. 47.1.

 "To maintain a defamation cause of action, the plaintiff must prove that the
defendant: (1) published a statement; (2) that was defamatory concerning the
plaintiff; (3) while acting with either actual malice if the plaintiff was a public official or
public figure, or negligence if the plaintiff was a private individual, regarding the truth
of the statement." WFAA-TV, Inc. v. McLemore, 978 S.W.2d 568, 571 (Tex. 1998). An
oral defamatory statement is slander while a written defamatory statement is libel. 
See Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon 2005); Randall's Food Mkts.,
Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995). A defamatory statement is one that
tends to injure a person's reputation and thereby exposes the person to public hatred,
contempt, ridicule, or financial injury. See Tex. Civ. Prac. & Rem. Code Ann. § 73.001
(Vernon 2005); Einhorn v. LaChance, 823 S.W.2d 405, 410-11 (Tex. App.--Houston
[1st Dist.] 1992, writ dism'd w.o.j.). The threshold issue is whether there are
published words capable of a defamatory meaning. Musser v. Smith Protective Servs.,
Inc., 723 S.W.2d 653, 654 (Tex. 1987).

 In their no-evidence motion for summary judgment, Drs. Cintron and Ghafoori
specifically challenged the second element of defamation--that any statements made
were defamatory. See Tex. R. Civ. P. 166a(i) (requiring that the movant state the
elements of the claim or defense to which there is no evidence). In his response to
appellees' motion for summary judgment, without stating what Drs. Cintron and
Ghafoori said about him, Dr. Pisharodi asserted only that Drs. Ghafoori and Cintron
acted with appellees Drs. Six and Betancourt "to do things includ[ing] publishing
statements to harm [his] reputation and cause [him] to be subjected to contempt,
ridicule are [sic] financial injury." Moreover, on appeal, Dr. Pisharodi maintains that
Drs. Cintron and Ghafoori "made false and deliberate accusations that the patient
died during . . . surgery" resulting in a chart review initiated by Dr. Ghafoori and that
they "misrepresented [his] conduct to the executive committee and convinced them
to issue a reprimand." However, Dr. Pisharodi did not produce any summary
judgment evidence that Drs. Cintron and Ghafoori made these statements. See Tex.
R. Civ. P. 166a(i). We, therefore, conclude Dr. Pisharodi did not produce summary
judgment evidence raising a genuine issue of material fact that Drs. Cintron and
Ghafoori made defamatory statements about him. See id; Mack Trucks, 206 S.W.3d
at 582. Thus, the trial court did not err in granting Dr. Cintron's and Ghafoori's no-evidence motion for summary judgment on Dr. Pisharodi's defamation claim.

 Furthermore, in the pleadings and now on appeal, Dr. Pisharodi does not make
any assertions that Drs. Cintron and Ghafoori tortiously interfered with Dr. Pisharodi's
contract or conspired to interfere with a contract. See Tilton v. Marshall, 925 S.W.2d
672, 681 (Tex. 1996). In fact, in his pleadings Dr. Pisharodi directs all allegations of
interference and conspiracy toward Drs. Betancourt, Hansen, and Six. We, therefore,
need not address these claims as to Drs. Cintron and Ghafoori. See Tex. R. App. P.
47.1; Tilton, 925 S.W.2d at 681 ("[A] defendant's liability for conspiracy depends on
participation in some underlying tort for which the plaintiff seeks to hold at least one
of the named defendants liable."). Accordingly, we conclude that the trial court did
not err in granting summary judgment in favor of Drs. Cintron and Ghafoori on Dr.
Pisharodi's tortious interference and conspiracy claims. See Tex. R. App. P. 47.1. Dr.
Pisharodi's sixth issue as to Drs. Cintron and Ghafoori is overruled.

 Having overruled Dr. Pisharodi's first and sixth issues and concluding that
summary judgment was properly granted, we need not consider his remaining issues
as they are not "necessary to the final disposition of the appeal." Tex. R. App. P. 47.1;
Branton, 100 S.W.3d at 647 (providing that we will affirm the summary judgment if any
of the theories are meritorious).

VI. Conclusion

 The trial court's judgment is affirmed.

 

 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and 

filed this 10th day of January, 2008.
1. In their brief, appellees state that Drs. Cintron, Ghafoori, and Hansen have participated in the
credentialing process but that Drs. Six and Betancourt have not.
2. Dr. Pisharodi's appeal of the Antitrust Case, filed on and styled Pisharodi v. Six, is pending in
this Court under cause number 13-07-00019-CV.
3. Appellees present their res judicata argument only as to Drs. Betancourt, Hansen, and Six.